

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAR 1 9 2020

Stephens, C.J
CHIEF JUSTICE



This opinion was
filed for record
at 8am on March 19, 2020

for Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE JUDGES OF THE BENTON AND FRANKLIN COUNTIES SUPERIOR COURT: JUDGE JOE BURROWES, JUDGE ALEX EKSTROM, JUDGE CAMERON MITCHELL, JUDGE CARRIE RUNGE, JUDGE JACQUELINE SHEA-BROWN, JUDGE BRUCE SPANNER, AND JUDGE SAM SWANBERG, | NO. 96821-7<br><br>EN BANC<br><br>Filed MAR 1 9 2020 |
| Respondents,<br><br>v.<br><br>MICHAEL J. KILLIAN, FRANKLIN COUNTY CLERK AND CLERK OF THE SUPERIOR COURT,<br><br>Appellant. | |

GORDON McCLOUD, J.—We are asked to decide whether superior court judges may require the county clerk to maintain paper files of court documents. The judges of Benton and Franklin Counties Superior Court issued a local rule ordering the clerks of the two counties to do so. Believing that electronic files are

preferable, Michael Killian, clerk of Franklin County, refused, and the judges sought a writ of mandamus compelling him to comply. The superior court issued the writ, and we granted direct review. Order, *Judges of Benton & Franklin Counties v. Killian*, No. 96821-7 (Wash. Sept. 4, 2019).

We vacate the writ. The judges had an alternative, plain, speedy, and adequate remedy to a writ of mandamus: declaratory judgment. *Riddle v. Elofson*, 193 Wn.2d 423, 436, 439 P.3d 647 (2019) (*Riddle* II) (plurality opinion). Thus, the superior court should not have issued the writ. In any event, the county clerk, not the superior court, gets to choose the format in which court documents are maintained.

## FACTUAL AND PROCEDURAL BACKGROUND

Clerk Killian is the elected county clerk of Franklin County. Clerk's Papers (CP) at 117. By virtue of this role, Clerk Killian also serves as clerk of the superior court. WASH. CONST. art. IV, § 26.

The counties of our state have recently transitioned, or are in the midst of transitioning, from paper systems to electronic systems for the management of court documents. CP at 26. When Clerk Killian announced that he would maintain only electronic files of court documents in Franklin County, the judges of Benton and Franklin Counties Superior Court, a two-county joint judicial district, directed him to continue maintaining paper files as well. CP at 233. Although the

2

judges claim that they prefer to go paperless eventually, they want to ensure that the move does not "adversely affect the Court's ability to conduct court proceedings and other court functions." CP at 33 (BENTON & FRANKLIN COUNTIES SUPER. CT. LOCAL GEN. R. 3 (LGR 3). In a declaration, Judge Spanner explains that the court needs "the ability to retrieve and use court data and records wherever and whenever judicial officers and staff need access to those records." CP at 27. For example, Judge Spanner claims that "settlement conferences in domestic relations cases are conducted in jury rooms," which lack computers; thus, he needs a paper file of the documents "relevant to the issues in the settlement conference." CP at 28.[1]

Clerk Killian refused to comply with the judges' order to maintain paper files. He believes that the decision to maintain electronic or paper files is his alone to make. CP at 233. He argues that electronic records are preferable to paper records because electronic records can be accessed remotely at any time and from anywhere. CP at 120. According to him, the judges have access to electronic records via laptops, iPads, or desktop computers, which are provided at taxpayer

---

[1] The judges also expressed concerns about "workflows and work queues" and electronic signatures, CP at 29, 33, but from the record before us, the contours of those concerns are unclear.

expense. *Id.* Clerk Killian further asserts that maintaining paper files is expensive and that he lacks the funds to do so. CP at 117-18, 243-48.

Although he has refused to maintain paper files, Clerk Killian states that he will provide, and has provided, paper files to the judges upon request. CP at 121-22, 243. When a judge puts in a request for a paper file, Clerk Killian prints a copy of the electronic file and gives it to the requesting judge—the result being no different than if Killian had pulled the paper file from a filing cabinet. *Id.* According to Clerk Killian, if a judge needs a paper file for an upcoming settlement conference, then the judge merely needs to request the file from Clerk Killian's office beforehand. *Id.*

In response to the clerk's refusal to maintain paper files, the judges issued an emergency order and adopted LGR 3, which requires the clerks of Benton and Franklin Counties to "keep and maintain paper files for all cases and file types" and to "make up-to-date paper files for all cases and case types." CP at 32-33. The rule expressly bars the clerk's office from going paperless until the judges approve the move in writing. CP at 33. Clerk Killian has refused to comply with LGR 3. CP at 233.

The judges sued Clerk Killian and asked Franklin County Superior Court[2] to issue a writ of mandamus to compel him to comply with LGR 3. CP at 34-36, 233. On summary judgment, the superior court found in favor of the judges and issued the writ, ordering the clerk to maintain paper files until the judges agree to go paperless. CP at 236-41. Relying on *In re Recall of Riddle*, 189 Wn.2d 565, 403 P.3d 849 (2017) (*Riddle* I), the superior court reasoned that the county clerk, when acting as superior court clerk, must obey the judges' orders. CP at 234. The superior court explained that the county clerk acts as superior court clerk, a ministerial position, "whenever the word 'court' is mentioned." *Id.* Because this case involves a dispute over *court* documents, the superior court ruled that Clerk Killian lacks "independent discretion or authority" and must comply with LGR 3. *Id.*

We granted direct review.[3]

---

[2] Since the Franklin County judges are parties, Kittitas County Superior Court Judge Scott Sparks was temporarily assigned to hear this case. CP at 317-18.

[3] Three associations filed briefs as friends of the court: Washington State Association of County Clerks, Washington State Association of Counties, and Allied Daily Newspapers of Washington.

ANALYSIS

I.  The superior court erred by issuing a writ of mandamus

A superior court may issue a writ of mandamus "to compel the performance of an act which the law especially enjoins as a duty resulting from an office." RCW 7.16.160. A writ of mandamus "is an extraordinary remedy." *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 588, 243 P.3d 919 (2010) (citing *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994)). "A party seeking a writ of mandamus must show that (1) the party subject to the writ has a clear duty to act; (2) the petitioner has no plain, speedy, and adequate remedy in the ordinary course of law; and (3) the petitioner is beneficially interested." *Id.* at 588-89 (citing RCW 7.16.160, .170).

Here, the superior court should not have issued a writ of mandamus because the judges have a plain, speedy, and adequate remedy in the ordinary course of law. "A remedy is not inadequate merely because it is attended with delay, expense, annoyance, or even some hardship." *Riddle* II, 193 Wn.2d at 434 (citing *State ex rel. O'Brien v. Police Court*, 14 Wn.2d 340, 347-48, 128 P.2d 332 (1942)). "Something in the nature of the action must make it apparent that the rights of the litigants will not be protected or full redress will not be afforded without the writ." *Id.* (citing *O'Brien*, 14 Wn.2d at 347-48).

6

In *Riddle* II, a majority of judges on the Yakima County Superior Court issued an order that required the county clerk of Yakima to secure an additional bond. *Id.* at 427. Riddle believed that the judges lacked statutory authority to issue the order and sought a writ of prohibition against them. *Id.* A writ of prohibition, like a writ of mandamus, is an extraordinary remedy that requires the absence of a plain, speedy, and adequate alternative remedy. *Id.* at 430.

We held that such an alternative remedy did exist. *Id.* at 437. We explained that "Riddle could have sought relief through a preliminary injunction and declaratory judgment." *Id.* at 436 (citing CR 65; CR 57; RCW 7.24.010-.190). Those remedies would have enjoined enforcement of the judges' order and allowed the courts to determine whether the judges had statutory authority to issue the order in the first place. *Id.*

Likewise, the judges in this case could have sought a declaratory judgment, which would have allowed the courts to determine the validity of LGR 3. If the courts were to rule that LGR 3 was valid, then Clerk Killian would have to comply with it. If he still refused, then the judges could seek a writ of mandamus. Here, the judges skipped a step.

This is a remarkable case in that superior court judges are involved. Those judges have constitutional authority to "establish uniform rules for the government of the superior courts." WASH. CONST. art. IV, § 24. This rule making authority

7

seemingly gives the judges an advantage in all disputes involving them: they can turn to their rule making authority and resolve the dispute in their favor. But the rule must be a valid exercise of authority, and a neutral arbitrator, not the judges who are party to the dispute, should determine whether the rule is valid. This is best done through a declaratory judgment proceeding.

The judges argue that Clerk Killian "was as likely to defy a judgment obtained under the [Uniform Declaratory Judgments Act, ch. 7.24 RCW] as he has been to defy LGR 3 by refusal to comply with it." Br. of Resp'ts at 32. We will not speculate whether Clerk Killian, an elected official who has taken an oath to "faithfully and impartially discharge [his] duties," RCW 36.16.040, would refuse to comply with LGR 3 even after the courts declared it valid. *See City of Hoquiam v. Pub. Emp't Relations Comm'n*, 97 Wn.2d 481, 489, 646 P.2d 129 (1982) ("In fact, the presumption is that 'public officers will properly and legally perform their duties until the contrary is shown.'" (quoting *Rosso v. State Pers. Bd.*, 68 Wn.2d 16, 20, 411 P.2d 138 (1966))).

We therefore vacate the writ of mandamus. The judges had an alternative remedy, and that remedy is plain, speedy, and adequate.

II.   The county clerk, not the superior court, gets to decide whether to maintain paper files

Even if it were appropriate for the judges to seek a writ of mandamus here, they would still lose. The maintenance of court documents is not an in-court duty of the superior court clerk. It is an out-of-court duty of the county clerk. Thus, the county clerk, not the superior court judges, gets to determine the format in which those documents are maintained, and LGR 3 is an impermissible attempt to usurp the county clerk's discretion.

A. The county clerk serves a dual role

In the majority of counties in our state, including Franklin and Benton, the people elect the county clerk. WASH. CONST. art. XI, § 5. That elected official, by virtue of being county clerk, also serves as clerk of the superior court. WASH. CONST. art. IV, § 26. Thus, although the county clerk serves a role within the judicial branch, the clerk is also a separately elected official who serves a role outside the judicial branch.

This dual role puts county clerks such as Clerk Killian in a unique position. When acting as clerk of the superior court, Clerk Killian largely lacks autonomy and must follow the court's rules. *See Riddle* I, 189 Wn.2d at 583 (explaining that the superior court clerk essentially serves a ministerial role) (citing *Swanson v. Olympic Peninsula Motor Coach Co.*, 190 Wash. 35, 38, 66 P.2d 842 (1937)). But

9

when acting as county clerk, Clerk Killian is independent from the court and accountable to the people. *See* WASH. CONST. art. XI, § 5 (providing for an elected county clerk to serve as part of county government).

Our constitution does not define the duties of either the county clerk or the clerk of the superior court. *See* WASH. CONST. art. XI, § 5, art. IV, § 26. The duties of the superior court clerk "are defined both by statute and court rules." *Riddle I*, 189 Wn.2d at 583 (emphasis omitted) (quoting *Swanson*, 190 Wash. at 38). The duties of the county clerk are defined by statute. *See* WASH. CONST. art. XI, § 5 (delegating the task of defining the county clerk's duties to the legislature). The two roles often overlap, and it is not always obvious whether the elected clerk is acting as county clerk or as superior court clerk. *Cf. Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 504, 198 P.3d 1021 (2009) (recognizing that the separate branches of government are "partially intertwined" and not "'hermetically sealed off from one another'" (quoting *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994))). This is particularly true when it comes to court documents.

What is clear is the need for cooperation between the superior court and the county clerk. *See* GR 29(f) cmt. (noting the autonomy of the county clerk and instructing the superior court to "communicate to the county clerk any concerns regarding the performance of statutory court duties by county clerk personnel"); *cf. Hale*, 165 Wn.2d at 507 ("The art of good government requires cooperation and

flexibility among the branches."); *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975) ("Harmonious cooperation among the three branches is fundamental to our system of government."). Unfortunately, this cooperation occasionally breaks down and we are forced to step in. *Brown v. Owen*, 165 Wn.2d 706, 721, 206 P.3d 310 (2009) ("[W]e will reluctantly act as impartial referee between branches of government in order to maintain a constitutional balance between them." (citing *Wash. State Legislature v. State*, 139 Wn.2d 129, 137, 139, 985 P.2d 353 (1999))).

> B. When it comes to in-court duties, the elected clerk acts in the role of superior court clerk and must follow court rules

This is not the first dispute to reach our court over the scope of an elected clerk's powers. In *Riddle* I, petitioners sought to recall the clerk of Yakima County in part because she "refused to perform in-court duties." 189 Wn.2d at 568. For example, the clerk refused to operate the court's electronic recording equipment and to provide copies of recordings upon request. *Id.* at 579. After the clerk's initial refusal, the superior court passed a local rule that "'describe[d] actual current courtroom procedures and the responsibilities of the Clerk of the Court *while in court.*'" *Id.* at 579-80 (emphasis added) (quoting YAKIMA COUNTY SUPER. CT. LOCAL ADMIN. R. 3). The clerk did not budge—and even threatened to close her office so as to force the court to shut down. *Id.* at 580.

11

The clerk argued that "she had no obligation to perform in-court duties." *Id.* at 582. We acknowledged that the clerk "retain[ed] authority over the clerk's office." *Id.* at 583. But we explained that the clerk had to perform *in-court* duties and follow the court's rules in her role as clerk of the superior court. *Id.* ("[A] court *does* have the authority to direct the functions of the clerk when he or she is acting in his or her capacity as clerk of the superior court."); *see also* RCW 2.32.050(9) (stating that superior court clerks must conform to the direction of the court). Since the duties at issue affected the operation of the court, we held that the clerk "ha[d] no legally justifiable excuse for refusing to follow [the court rule]." *Riddle* I, 189 Wn.2d at 584.

Here, we must determine whether the maintenance of court documents is an in-court duty. If it is, then *Riddle* I controls and the superior court may instruct the clerk to maintain paper files. If it's not, then the county clerk may choose whether to maintain paper files or electronic files and the judges may not interfere with the clerk's discretion.

C. The maintenance of court documents is not an in-court duty

Here, the superior court reasoned that the county clerk acts as superior court clerk "whenever the word 'court' is mentioned," and since LGR 3 involves the maintenance of *court* documents, Clerk Killian had to listen to the judges. CP at 234. To be sure, in addition to the in-court duties described in *Riddle* I, the clerk

has many other in-court duties, several of which involve court documents. *See, e.g.*, RCW 2.32.050(6) (stating that the clerk must "enter [the court's] orders, judgments, and decrees"); GR 15(c)(4) ("When the clerk receives a court order to seal the entire court file, the clerk shall seal the court file and secure it from public access."); GR 30(c)(2) ("The clerk shall issue confirmation to the filing party that an electronic document has been received."); AR 5 ("The clerk shall provide [information contained in the criminal judgment and docket records of the superior court clerk] to the Department of Corrections."). And we have explained that "court case files are within the province of the judiciary," *Nast v. Michels*, 107 Wn.2d 300, 306, 730 P.2d 54 (1986), and that "[c]ourts have the inherent authority to control their records and proceedings," *Cowles Publ'g Co. v. Murphy*, 96 Wn.2d 584, 588, 637 P.2d 966 (1981) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); *In re Sealed Affidavit(s) to Search Warrants*, 600 F.2d 1256 (9th Cir. 1979) (per curiam)). We guard against improper encroachment by the executive and legislative branches into areas within the judiciary's province. *Hagen & Van Camp v. Kassler Escrow, Inc.*, 96 Wn.2d 443, 453, 635 P.2d 730 (1981).

"However, the separation of powers doctrine allows for some interplay between the branches of government." *State v. Chavez*, 163 Wn.2d 262, 273, 180 P.3d 1250 (2008) (citing *Spokane County v. State*, 136 Wn.2d 663, 672, 966 P.2d

13

314 (1998)). At the superior court level, the clerk is elected to a constitutional position that exists outside the judicial branch. WASH. CONST. art. XI, § 5. The legislature defines the duties of that position, *id.*, and has included several responsibilities involving court documents. For instance, the county clerk is "responsible for the safe custody . . . of all books and papers belonging to his or her office." RCW 36.23.040. Those books and papers in part consist of court documents. *See* RCW 2.32.050(3) (stating that the clerk must "keep the records, files, and other books and papers appertaining to the court"); *see also* RCW 36.23.030 (listing various records to be kept by the clerk).[4] Although the clerk must keep court documents safe, he or she does not have to keep safe the *original* documents. The clerk may destroy the original documents "in any action or proceeding in the superior court," so long as he or she maintains a copy in some format, such as electronic. RCW 36.23.065.

---

[4] Pursuant to RCW 2.32.050(4), the superior court clerk must "file all papers delivered to him or her for that purpose in any action or proceeding in the court as directed by court rule or statute." In 2001, our attorney general opined that this statute would allow a superior court to create a local rule requiring the county clerk to file court documents within a specified length of time. 2001 Op. of the Att'y Gen. No. 6 (https://www.atg.wa.gov/ago-opinions/authority-superior-court-impose-filing-deadline-county-clerk). First of all, we note that the timing of a filing is much more likely to affect judicial operations than is the format in which a filing is maintained. Second, the attorney general opinion states that "the status of the clerk as an elected officer . . . might be relevant for other reasons in other contexts." *Id.* This is one of those other contexts where that status is not only relevant, it is dispositive.

14

Notably, that statute does not require the clerk to obtain permission from the court before destroying the original documents and maintaining electronic copies. *See id.* When it comes to court *exhibits*, however, the clerk *does* need permission from the court. *See* RCW 36.23.070 (allowing the clerk to destroy exhibits only after the superior court signs and enters an authorizing order). We presume a difference in legislative intent when the legislature "uses certain language in one instance but different, dissimilar language in another." *Millay v. Cam*, 135 Wn.2d 193, 202, 955 P.2d 791 (1998) (citing *United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984)).

Here, in direct conflict with the legislatively defined role of the county clerk, the judges of Benton and Franklin Counties have instructed, via LGR 3, the county clerks to "keep and maintain paper files for all cases and file types." CP at 32-33. That rule expressly bars the clerks from going paperless until the judges approve the move in writing. CP at 33. In effect, the judges have taken away the county clerks' independent discretion and authority and given it to themselves. The judges cannot do this. *See State ex rel. Gordon v. Superior Court*, 3 Wash. 702, 704-05, 29 P. 204 (1892) (explaining that the court may not interfere with the clerk's independent statutory discretion).

That is particularly true here, where the clerk's duty to maintain the superior court's records was constitutionally delegated to the legislature and then

15

specifically assigned by that body. *See* WASH. CONST. art. XI, § 5 (delegating the task of defining the county clerk's duties to the legislature); RCW 36.23.040 (stating that the county clerk is responsible for the safekeeping of records), .065 (allowing the county clerk to maintain documents in electronic form). Although the judges may create local rules, WASH. CONST. art. IV, § 24, those rules may not interfere with the core functions of the county clerk, *cf. State v. Rice*, 174 Wn.2d 884, 905, 279 P.3d 849 (2012) (explaining that the legislature cannot interfere with the "core functions" of prosecuting attorneys); *Chavez*, 163 Wn.2d at 273 (explaining that "the activity of one branch" cannot "threaten[] the independence or integrity or invade[] the prerogatives of another branch" (citing *Spokane County*, 136 Wn.2d at 667)).

Of course, the county clerk may not refuse to provide court documents to the judges upon request or threaten to shut down the court. *Riddle I*, 189 Wn.2d at 579-80. But the county clerk may choose the open, accessible format in which to safely and accessibly maintain court documents. Here, Clerk Killian plans to maintain the documents electronically, and he has stated an intent to provide the judges with paper copies upon request. CP at 121-22. Not only is that plan reasonable, it is also permissible under our constitution and statutes. The decision to maintain documents electronically is Clerk Killian's to make in his role as the

elected county clerk, and the judges may not usurp the clerk's discretion by ordering him to maintain paper files instead.

III.     We deny the judges' request for attorney fees

The judges ask for attorney fees. "A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party substantially prevails." *In re Appointment of Special Deputy Prosecuting Att'y*, 193 Wn.2d 777, 791, 446 P.3d 160 (2019) (citing *Hwang v. McMahill*, 103 Wn. App. 945, 954, 15 P.3d 172 (2000)). Because the judges have not prevailed, we deny their request for attorney fees.

CONCLUSION

We reverse the superior court and vacate the writ of mandamus. That court should not have issued a writ of mandamus because the judges had a plain, speedy, and adequate alternative remedy. Regardless, the county clerk, not the superior court judges, gets to select the open, accessible format in which court documents are safely and accessibly maintained. Since the county clerk has prevailed, we deny the judges' request for attorney fees.

17

_[signature]_ Gee R. Ct., J.

WE CONCUR:

_[signature]_ Stephens, C.J.

_[signature]_ Wiggins, J.

_[signature]_ Johnson, J.

_[signature]_ González, J.

_[signature]_ Madsen, J.

_[signature]_ Yu, J.

_[signature]_ Owens, J.

_[signature]_ Fairhurst, J.P.T.

18